FILED
2006 Jan-12  AM 09:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

NANCY PARRISH,

      Plaintiff,

vs.                                  CASE NO. CV-05-J-111-NW

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

      Defendant.

## MEMORANDUM OPINION

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully terminated her long term disability benefits, in violation of 29 U.S.C. § 1001, *et seq*. The defendant filed a motion and memorandum for summary judgment (doc. 25) to which the plaintiff filed a brief in opposition (doc. 31) and evidence in support of her brief.  The defendant provided the court the administrative record (doc. 32) and thereafter filed a reply (doc. 33).   Upon consideration of the pleadings, memoranda and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain in this case.

## FACTUAL BACKGROUND

The underlying facts of this case are not in dispute. The plaintiff was employed by Darden Restaurants, Inc., through which plaintiff had a long-term disability (LTD) policy. Plaintiff asserts that defendant wrongfully denied her claim for long-term disability benefits under the definition of "any occupation" disability as that term is used in the policy.

The plaintiff was hired by defendant at a Red Lobster restaurant on June 5, 1995, and was a Culinary Manager at the time she stopped working, January 24, 2002. DEF000145, 000435. She alleges an inability to perform her job, or any other job, due to scoliosis and disk degeneration. DEF000077, 000083-84, 000090-91, 000095. The plaintiff has received twenty-four months of benefits under the LTD policy, which the parties agree is the maximum benefits allowable under the "own occupation" definition. *See e.g.*, DEF000121, DEF000336.

Thereafter, beginning on January 2, 2004, the defendant undertook an "any occupation" review of the plaintiff's claims, and found she could perform a variety of sedentary to light occupations.[1] DEF000069, 000072-74. The plaintiff disputes this conclusion. After the conclusion of plaintiff's appeal of defendant's denial of

---

[1]"Any occupation" is described under the LTD policy as "any other occupation for which he [or she] becomes reasonably fitted by training, education, experience, age and physical and mental capacity." DEF000006.

continuing benefits, she was awarded Social Security benefits based on complete disability.  Exhibit 5, plaintiff's evidentiary submissions.

The parties agree that the defendant is the claims administrator and has sole authority "to construe the terms of the policy and to determine benefit eligibility hereunder."  DEF000026.  Although not explicitly stated by either party, plan beneficiaries apparently pay a premium, set by defendant, to participate in the group policy, which is then remitted to defendant.  DEF000031.

The sole issue raised in this case is factual, namely whether or not the plaintiff is disabled from performing "any occupation," as defined by the LTD policy.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits,

or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e).   In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial."  Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that the plaintiff is not disabled from "any occupation," is correct.  The Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecommunications, Inc,.* 373 F.3d 1132, 1138 (11th Cir.2004).

The plaintiff here argues that the "heightened arbitrary and capricious" standard should apply as the plaintiff administrator operated under a conflict of interest.  Plaintiff's brief, at 12. Defendant seems to concede that this is the appropriate standard of review.  Defendant's memorandum in support of summary judgment, at 13.  The defendant further asserts that "the Administrative Record demonstrates that Liberty gave Plaintiff every opportunity to provide any and all available documentation in support of her claim." *Id.*, at 13-14.  Thus, the court must determine whether the decision to deny benefits was reasonable, given the information known to the administrator at the time the decision was made. *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1550 (11th  Cir.1994) (stating that in ERISA cases, the court is limited to the evidence before the Administrator at the time the claim for benefits was denied).

5

Applying the rules set forth in *Williams, supra*, the court must first determine whether the decision of the defendant was "wrong."  The evidence before the defendant at the time of its decision is as follows:

Due to ongoing pain, the plaintiff had a scoliosis brace made at a Louisiana clinic which was apparently expensive and required ongoing trips to Louisiana for adjustments to the brace.  DEF000084, DEF000088. *See also* DEF000262-270. However, the plaintiff was ultimately not able to afford this.  DEF000084.  Plaintiff's treating physician, Dr. Hatchett, noted that the plaintiff "has a chronic problem and it will quite likely worsen with time."  DEF000084. As early as January 2002, Dr. Hatchett found that the plaintiff had significant degenerative disc disease and degenerative joint disease.  DEF000092.  In July 2002, Dr. Hatchett assigned limitations in the plaintiff's physical abilities, which he noted were "permanent." DEF000287. These limitations included sitting, standing and walking no more than 1/3 of the day, no lifting more than ten pounds, and a determination that the plaintiff was unable to perform bending, climbing, pushing or pulling.  DEF000287.  He did not believe that she would be able to return to work.  DEF000287.  He again opined in March 2003 that the plaintiff could not sustain an eight hour work day due to persistent back pain and again assigned similar limitations.  DEF000233.

Defendant paid for plaintiff to undergo a Functional Capacity Evaluation ("FCE"), which took place in August 2003. DEF000169-000192. As a result of that evaluation, the plaintiff was determined to be able to perform work at the medium level. DEF000170. Her diagnoses at the time were scoliosis and degenerative disc disease. DEF000172.

Records from plaintiff's doctor dated in January 2004 reflect that the plaintiff has "very significant scoliosis" and pain, but no muscle spasm was noted. DEF000083. On February 16, 2004, Dr. Hatchett stated that the plaintiff was permanently disabled due to severe scoliosis.[2] DEF000058. This opinion was in response to defendant's requests for updated medical records. DEF000081. Upon receipt of the foregoing, the defendant still denied the plaintiff's claim for ongoing benefits due to the lack of any documented muscle spasm or neurological deficit associated with plaintiff's scoliosis.[3] DEF000061-62, DEF000072. Defendant criticized Dr. Hatchett's opinion that the plaintiff was permanently disabled, stating that he failed to provide any specific restrictions. DEF000097; DEF000101.

---

[2]Although this letter is actually dated "2003," an accompanying letter from plaintiff's counsel, dated March 11, 2004, suggests that Dr. Hatchett's opinion was actually rendered in 2004. See DEF000076-77.

[3]The plaintiff's benefits were actually ceased on several occasions. Upon the first cessation, the benefits were reinstated upon plaintiff's appeal of that decision. Therefore, the court only considers the final termination of plaintiff's benefits. The parties do not dispute that the plaintiff properly exhausted her administrative rights to appeal the decision prior to the time this lawsuit was brought. See e.g., DEF000063-68.

Defendant also referred plaintiff's file to a Vocational Specialist, who, based on review of the file, determined that the plaintiff could perform a variety of occupations. DEF000097. At defendant's behest, the Vocational Specialist used restrictions determined in August, 2003.[4] DEF000117-120.

Defendant had the plaintiff's medical records reviewed by Dr. Gale G. Brown, Jr., who stated that "it is my professional medical opinion that Ms. Parrish can be considered for any sedentary-light occupation full-time for which she is qualified." DEF000072. This was rendered as defendant's final decision, terminating plaintiff's appeal, on April 16, 2004. DEF000064-68. A claim note on that date states that, per Dr. Brown, the alternative occupations identified are within limitations which include occasionally lifting/carrying 10 to 15 pounds with a maximum lift of 20 pounds; frequent sitting, standing, walking, stooping, crouching and kneeling with position changes as needed every 45 to 60 minutes; and avoiding repetitive bending/twisting at waist level. DEF000033-34.

Dr. Hatchett opined on August 13, 2004 (after defendant finally denied plaintiff's claim), that the plaintiff was limited to sitting, standing and walking for no more than one hour at a time for each activity. DEF000054. He believed the plaintiff

---

[4]The court notes that the first review of the August 11, 2003, assessment by defendant resulted in a determination that the plaintiff could perform her "own occupation," which decision was later reversed. DEF000125-127, DEF000147-151.

could sit for four hours in an eight hour day, and stand and walk for three hours each in an eight hour day.  He further noted that the plaintiff could lift up to ten pounds frequently and carry up to five pounds frequently, but was limited from performing repetitive movements with her legs.  DEF000054.  By letter the same date, Dr. Hatchett stated that the plaintiff suffered from "severe scoliosis and ... herniated disc at L3-4 and bulging disc at L4-5."  DEF000055.  He further opined that "she is not able to work.  Unless something happens to improve her condition, this condition will be permanent."  DEF000055.  The plaintiff's treating physician has repeatedly informed the defendant of his opinion that the plaintiff is limited from any full time work because she cannot complete the demands of an eight-hour work day. DEF000101, 000233.

Defendant argues that it has never disputed the plaintiff's diagnoses.  Rather, defendant claims that the plaintiff failed to meet her burden to establish that she could not perform any occupation.  Defendant's memorandum, at 15.  However, defendant relied on its own medical professionals, who reviewed plaintiff's medical records to determine that the plaintiff was not disabled under the policy's "any occupation" definition, and therefore terminated the plaintiff's benefits.  Although defendant was not bound to give the opinions of the plaintiff's treating physician special deference when it evaluated the merits of the plaintiff's claims for continued benefits, ERISA

9

does require "full and fair" assessment of the plaintiff's claims.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003).  However, the Supreme Court has explicitly stated that this standard does not require giving a treating physician's opinion more weight than that of other evidence. *Id.*, 538 U.S. at 825, 123 S.Ct. at 1967 ("We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians.  ERISA and the Secretary of Labor's regulations under the Act require "full and fair" assessment of claims and clear communication to the claimant of the "specific reasons" for benefit denials .... But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition").  However, the defendant does not seem to consider plaintiff's contention that, while she could engage in the listed physical activities, she could not perform them for eight hours a day, five days a week.

Assuming arguendo that the defendant's decision was in fact *"de novo* wrong" due to its failure to take plaintiff's ability to perform the physical demands of work on a full time basis, the court next considers whether the defendant was vested with discretion in reviewing claims.  *Williams*, 373 F.3d at 1138.  The parties agree, and the plan language clearly states, that the defendant has the sole authority to determine eligibility for benefits and that its decisions on benefit eligibility are conclusive and

10

binding. DEF000026.  Even assuming that the decision was "wrong," the court must still uphold the decision of the administrator if it was "wrong but reasonable" because of discretion granted the administrator.  *See Yochum v. Barnett Banks, Inc. Severence Pay Plan*, 234 F.3d 541, 544 (11th Cir.2000).  In other words:

> Even if the court determines that the claimant's interpretation is reasonable, the claimant does not necessarily prevail. At first glance it seems odd that a reasonable interpretation would not automatically defeat a wrong interpretation. The reason the claimant's reasonable interpretation does not trump the claims administrator's wrong interpretation is because the plan documents explicitly grant the claims administrator discretion to interpret the plan. *See Brown*, 898 F.2d at 1563 (stressing the importance of allowing an insurance company the benefit of the bargain it made in the insurance contract). We cannot over emphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo,* review is that a court defers to the discretion afforded the claims administrator under the terms of the plan. *See Firestone,* 489 U.S. at 111, 109 S.Ct. at 954 quoting Restatement (Second) of Trusts § 187 (1959) ("[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion").

*HCA Health Services of Georgia, Inc. v Employees*, 240 F.3d 982, 994 (11th Cir.2001). The court is of the opinion that, even assuming the decision to end the plaintiff's benefits was wrong, reasonable grounds existed for such determination. The limitations under which defendant opined plaintiff could perform full-time work are almost identical to the very limitations ascribed by Dr. Hatchett, plaintiff's treating physician.  Thus, the dispute is not whether the plaintiff had the limitations

in question, but rather whether those limitations would prevent all full-time employment.  The plaintiff failed to produce any evidence as to why she could not perform the specific jobs that defendant found accommodated the physical limitations.  Furthermore, even though the defendant had plaintiff sent for a functional capacities evaluation, and even though that evaluation rated the plaintiff as capable of medium level work, the defendant accepted that the plaintiff actually would be more limited in her physical activities due to pain.  Under these facts, the court finds the defendant's determination to be reasonable.

The court must next determine if the Plan administrator operated under a conflict of interest.[5] *Williams*, 373 F.2d at 1138.  A wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all

---

[5]Where a company both administers and funds a plan, a conflict of interest arises, thus triggering heightened arbitrary and capricious review. *See Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1562 (11th Cir.1990); *Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000); *Levinson v. Reliance Standard Ins. Co.,* 245 F.3d 1321, 1325-26 (11th Cir.2001) (Where administrator of benefits plan governed by ERISA pays out to participants out of its own assets, a conflict of interest exists between its fiduciary role and its profit-making role, and accordingly, a heightened arbitrary and capricious standard applies in reviewing administrator's discretionary denial of benefits under the plan).  *See also Buce v. Allianz Life Ins. Co.,* 247 F.3d 1133, 1141 (11th Cir.2001) (holding that heightened arbitrary and capricious standard applied where a plan administrator, despite delegating its claim processing duties to a third party, exercised the "ultimate authority to determine for itself whether payments should be made out of its own assets").

participants and beneficiaries." *Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1326 (11th Cir.2001).  Because the court has found a conflict of interest exists, the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by its self-interest.  *Featherston v. Metropolitan Life Ins. Co.,* 223 F.R.D. 647, 653 (N.D.Fla.2004).

> The Eleventh Circuit has not specifically addressed what evidence may indicate that the administrator's factual determination was motivated by self-interest.  Accordingly, a reviewing court must "contextually tailor" the burden-shifting analysis to suitably fit the factual determination process in ERISA disability claims. *Brown v. Blue Cross, supra,* 898 F.2d at 1556. Thus, in determining whether the administrator abused its discretion by advancing its own self-interest, a court might consider such evidence as whether the administrator can demonstrate the existence of a routine practice by which it reviews claims, and that it followed that routine practice in the present case.  *See Williams v. BellSouth,* 373 F.3d 1132, 1139 (11th Cir.2004). Even a conflicted administrator should receive deference when he demonstrates that he is exercising discretion among choices which reasonably may be considered to be in the overall best interests of the plan participants and beneficiaries. *Brown, supra,* 898 F.2d at 1568.

*Featherston*, 223 F.R.D. at 657-658.

Here, the defendant argues that it based its decision to terminate the plaintiff's benefits on repeated reviews of the plaintiff's medical evidence, and that there is simply no objective evidence which supports Dr. Hatchett's conclusion that the plaintiff is wholly disabled.  Plaintiff's entire argument is based on the defendant's failure to accept Dr. Hatchett's opinion.  Yet, under ERISA, the defendant is not

bound to give the opinions of the plaintiff's treating physician special deference.  *See*

*Black & Decker Disability Plan*, 538 U.S. at 825, 123 S.Ct. at, 1967.  Rather, "the

plaintiff has the burden of proving her entitlement to contractual benefits."  *Richards*

*v. Hartford Life & Acc. Ins. Co.,* 2005 WL 2888214, *2 (11th Cir.2005), citing

*Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir.1998).  In

the light most favorable to the plaintiff, the plaintiff's own treating physician, while

asserting she is unable to perform full time work, also completed multiple physical

capacities evaluations which demonstrate his opinion that the plaintiff is capable of

performing the physical requirements of a sedentary job.  On the same form that Dr.

Hatchett opined that the plaintiff could not work eight hours a day, he also noted that

the plaintiff could sit, stand and walk for a combined total of twelve hours a day.

DEF000233.  Defendant's medical reviewers state that, due to pain, the plaintiff is

likely limited to sedentary-type work.  The court can find nothing unreasonable or

arbitrary in the defendant's determination.   The plaintiff has failed to produce any

evidence as to why she cannot perform the jobs or types of jobs identified by the

defendant.  *See Richards*, 2005 WL 2888214, *3 ("In choosing between the

conflicting opinions of the treating and reviewing physicians, this Court might have

made a different choice. But even if we were to conclude that the administrator's

decision was *de novo* wrong, we-even under the heightened arbitrary and capricious

14

standard-could not say that the administrator abused his discretion by relying on the independent reviewing physician's opinion that Plaintiff was capable of full-time work during the relevant period").

Having considered the foregoing, the court is of the opinion that the defendant's motion for summary judgment is due to be granted as no genuine issues of material fact remain for trial and the defendant is entitled to judgment in its favor as a matter of law.

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment be and hereby is **GRANTED**.

**DONE** and **ORDERED** this the 12th day of <u>January</u>, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE